**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANGELLI FORTIER, | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| ANDREW SAUL, | : | |
| Commissioner of the | : | |
| Social Security Administration, | : | |
| Defendant | : | NO. 20-720 |

**MEMORANDUM**

CAROL SANDRA MOORE WELLS
CHIEF UNITED STATES MAGISTRATE JUDGE                         October 28, 2020

Angelli Fortier, a minor at the time of her hearing, ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), for partially denying her claim for child's supplemental security income ("SSI") benefits under Title XVI of the Social Security Act. Plaintiff has filed a brief in support of her request for review, the Commissioner has responded to it and Plaintiff has filed a reply brief.  For the reasons set forth below, Plaintiff's request for review is granted.

**I.  PROCEDURAL HISTORY**[1]

On September 30, 2016, when she was 15 years old, Plaintiff's mother applied for SSI, on her behalf, alleging an impairment of Anti-NMDA receptor encephalitis[2] ("encephalitis").  R. 75; Pl. Br. at 1-2; Resp. at 2.  The Social Security Administration initially denied Plaintiff's claim on

---

[1] The Court has reviewed and considered the following documents in analyzing this case:  Plaintiff's Brief and Statement of Issues in Support of Request for Review ("Pl. Br."), Defendant's Response to Request for Review of Plaintiff ("Resp."), Plaintiff's Reply in Support of Request for Review ("Reply"), and the administrative record. ("R.").

[2] Anti-NMDA Encephalitis is a neurologic and autoimmune disease, where the body creates antibodies against the NDMA receptors in the brain.  The antibodies disrupt normal brain signaling and cause brain swelling.  University of Pennsylvania Perelman School of Medicine, *Anti-NMDAR Encephalitis*, available at https://www.med.upenn.edu/autoimmuneneurology/nmdar-encephalitis.html (last accessed October 9, 2020).

February 21, 2017; therefore, she requested a hearing before an Administrative Law Judge ("ALJ").  R. 25; Pl. Br. at 3; Resp. at 2-3.

On July 31, 2018, Plaintiff appeared before Jonathan L. Weaver, the ALJ, for an administrative hearing; Plaintiff, represented by an attorney, and her mother, Maria Colon, through a Spanish Interpreter, Lisa Harrity, testified at the hearing.  R. 48-74.  On November 21, 2018, the ALJ, using the sequential evaluation process for disability[3], issued a partially unfavorable decision. R. 25-43.  He found that Plaintiff was disabled during a closed period, from September 30, 2016 through April 16, 2018, and medically improved on April 17, 2018, such that she was no longer disabled under the Act.  *Id*.  On December 5, 2019, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final determination.  R. 1-8.  On February 7, 2020, Plaintiff sought judicial review from this Court; both parties have consented to the undersigned's jurisdiction, pursuant to 28 U.S.C. § 636(c).

## II.     FACTUAL BACKGROUND

A.     <u>Personal History</u>

Plaintiff, born on February 19, 2001, was 15 years old on the alleged onset date.  R. 28-29. A minor then, she had no past relevant work and resided with her mother in Philadelphia, Pennsylvania.  R. 28-29 and 59.  At the time of the hearing, Plaintiff attended 11th grade at Mercy Career and Technical High School.  R. 35, 52.

---

[3]The Social Security Regulations provide the following three-step sequential evaluation for determining whether child claimant is disabled:

> 1.  If the claimant is working, doing substantial gainful activity, a finding of not disabled is directed.  Otherwise proceed to Step 2.  *See* 20 C.F.R. § 416.924(b).
> 2.  If the claimant is found not to have a severe impairment, a finding of not disabled is directed.  Otherwise proceed to Step 3.  *See* 20 C.F.R. § 416.924(c).
> 3.  If the claimant's impairment meets, medically equals or functionally equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed.  Otherwise the claimant is not disabled.  *See* 20 C.F.R. § 416.924(d).

B.      Plaintiff's Testimony

At the July 31, 2018 administrative hearing, Plaintiff testified that she suffered from memory loss and balance issues.  R. 52.  She informed the ALJ that she could not stand or walk straight and, as a result, stumbled.  R. 54.  Poor balance left Plaintiff unable to participate in sports or vacuum.  R. 54-55.  She testified that she has seizures but later clarified that she has not experienced one since March of 2017.  R. 54-55.

Plaintiff testified that her encephalitis affected her memory; she forgot how to wash clothes, cook, and clean.  R. 55.  She testified that her mother must constantly remind her of how to perform these simple tasks, because she is unable to remember.  R. 55-56.

Furthermore, Plaintiff's limited memory has impacted her school performance and caused other medical conditions.  R. 56.  First, she is unable to retain and remember any new lessons taught in school.  *Id*.  She struggles with spelling and math as she finds it difficult to retain new material.  R. 58.  Second, Plaintiff missed significant time from school, because of her condition, and, as a result, repeated a grade.  R. 56-57.  Next, she testified that due to her disability, she developed anxiety and depression.  R. 57.  Plaintiff said her depression stemmed from her schoolwork and her struggle to catch up with other students, even with the assistance of a tutor. R. 57-58.  According to her mother, this caused frustration and aggressive behavior.  R. 57. Finally, Plaintiff testified that she feels depressed and like an outsider every day in school.  R. 58.

C.      Testimony of Plaintiff's Mother, Maria Colon

Ms. Colon also testified about her daughter's limitations, R. 59-64; she observed that, before her onset date, Plaintiff was "very competent" and able to do things associated with others around the same age.  R. 59.  Now, Ms. Colon stated that Plaintiff is "very slow," because of the blockage on her brain caused by the encephalitis.  R. 59.  She confirmed that Plaintiff grew

frustrated and aggressive, secondary to her disabilities.  R. 59-60.  Ms. Colon oversees Plaintiff to ensure that she can organize her room on her own; Plaintiff cannot shop by herself.  R. 60-61.  Ms. Colon also discussed Plaintiff's difficulty in school which mirrored the same complaints Plaintiff made.  R. 61.

Encephalitis put Plaintiff in a coma which required hospitalization and inpatient rehabilitation from June 13, 2016 through November 16, 2016.  R. 65, 1874, 2303-04.  She experienced hallucinations and was required to undergo therapy every two weeks, see a neurologist every three months, and receive IVIG treatment every four weeks.  R. 64.  Doctors prescribed Plaintiff Tobramex and Tylenol when she experienced headaches.  R. 63.

### III.   THE ALJ'S FINDINGS

In his decision, the ALJ issued the following findings:

1.    The [Plaintiff] was born on February 19, 2001.  Therefore, she was an adolescent on September 30, 2016, the alleged onset date (20 CFR 416.926a(g)(2)).

2.    The [Plaintiff] has not engaged in substantial gainful activity since September 30, 2016, the date the [Plaintiff] became disabled (20 CFR 416.924(b) and 416.971 *et seq.*).

3.    From September 30, 2016 through April 16, 2018, the period during which the [Plaintiff] was under a disability, the [Plaintiff] had the following severe impairments: anti-NDMA [sic] receptor encephalitis (20 CFR 416.924(c)).

4.    From September 30, 2016 through April 16, 2018, the [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925, 416.926 and 416.926).

5.    From September 30, 2016 through April 16, 2018, the period during which the [Plaintiff] was disabled, the severity of [Plaintiff's] impairment functionally equaled the listings (20 CFR 416.924(d) and 416.926(a).

6.     The [Plaintiff] was under a disability, as defined by the Social Security Act, from September 30, 2016 through April 16, 2018 (20 CFR 416.924(a)).

7.     The [Plaintiff] has not developed any new impairment or impairments since April 17, 2018, the date the [Plaintiff's] disability ended.   Thus, the [Plaintiff's] current severe impairment is the same as that present from September 30, 2016 through April 16, 2018.

8.     Medical improvement occurred as of April 17, 2018, the date the [Plaintiff's] disability ended (20 CFR 416.994a(c)).

9.     Since April 17, 2018, the [Plaintiff] has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

10.     On April 17, 2018, the [Plaintiff] was an adolescent and is currently still an adolescent (20 CFR 416.926a(g)(2)).

11.     Since April 17, 2018, the [Plaintiff] has not had an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.994a(b)(2) and 419.926 and SSR 05-03p).

12.     The [Plaintiff's] disability ended April 17, 2018, and the [Plaintiff] has not become disabled again since that date (20 CFR 404.1594(4)(8)).

R. 28-29, 33-34, 42.

## IV.  DISCUSSION

A.     <u>Standard of Judicial Review</u>

Judicial review of the Commissioner's final decision is as follows.  The Commissioner's findings of fact will not be disturbed, if they are supported by substantial evidence.  *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).  Substantial evidence is not "a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation omitted). It is more than a mere scintilla of evidence but may amount to less than an evidentiary preponderance. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Overall, this test is deferential to the ALJ and the court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo,* might have reached a different conclusion. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). Indeed, the court is not permitted to weigh the record evidence itself. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). By contrast, the Commissioner's legal conclusions are subject to *de novo* review. *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B.    Review of the Administrative Law Judge's Decision

Applying the sequential evaluation process for children, the ALJ determined that Plaintiff was disabled for a closed period from September 30, 2016 through April 16, 2018; she began to medically improve on April 17, 2018, such that she was longer disabled or entitled to child's SSI benefits. R. 25-43.

Plaintiff maintains that the ALJ's decision contained legal errors and was not supported by substantial evidence. Pl. Br. at 10. Specifically, she asserts that the ALJ failed to provide a sufficient explanation for why he: (1) identified several impairments as "nonsevere"; (2) gave an arbitrary disability cessation date; and (3) failed to give the treating neurologist's opinion controlling weight, and impermissibly relied on his own lay opinion. Pl. Br. at 11-25. The Commissioner disputes Plaintiff's arguments and contends that the ALJ's decision is properly supported. Resp. at 1-26. This Court finds that: (1) the ALJ's characterization of Plaintiff's mood disorder as nonsevere is not supported by substantial evidence, and (2) he arbitrarily decided a cessation date. Hence, remand is appropriate.

1.   The ALJ Failed to Properly Evaluate Plaintiff's Mood Disorder Impairment

Plaintiff maintains that the ALJ erred when he categorized several impairments[4] as "nonsevere" without providing an individualized explanation for each impairment or citing any supporting evidence.  Pl. Br. at 11.  She asserts that the ALJ failed to consider the combined effects of all severe and non-severe impairments at Step 3.  *Id*.

The ALJ properly evaluated all of Plaintiff's impairments except her mood disorder.  As stated above, the ALJ is required to review the relevant evidence and, if there is substantial evidence to sustain her factual determinations, this Court accepts those fact-findings.  *See Poulos*, 474 F.3d at 91.  Substantial evidence is less than a preponderance.  *See Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

Here, the ALJ's findings, except for the mood disorder, are supported by the record. Although Plaintiff suffered from asthma, the ALJ noted that it is mild and intermittent.  R. 30, 1874, 2568, 2223, 2877, 2886.  Next, the record indicates that, although Plaintiff did suffer from acne, that condition did not functionally limit her in any way.  R. 2121.   Rather, Plaintiff's skin showed "no rashes or skin breakdown," R. 2111.   Nonetheless, she was prescribed Benzoyl peroxide, a topical antiseptic used to treat acne.  R. 2121.

The record shows that Plaintiff's allergic rhinitis, or seasonal allergies, did not provide any functional limitations.  R. 2108-09, 2223.   Just like her acne, her allergies were treated with medication as doctors put her on a plan to take Zyrtec, Flonase, and Singulair.  R. 2114, 2208. Next, Plaintiff's ongoing insomnia was associated with her encephalitis.  R. 2771.   Doctors prescribed melatonin and a plan which required her to "promote appropriate sleep hygiene, [stay]

---

[4] The ALJ concluded that the Plaintiff suffered from nonsevere impairments that included asthma, acne, allergic rhinitis, mood disorder, migraines, and insomnia.  R. 29.

up during [the] day, and maintain a sleep chart." R. 2114. The ALJ stated and, again, the record confirms, that Plaintiff's migraines were caused by her ongoing encephalitis treatment. R. 32. Her headaches, however, improved and eventually were "resolved." R. 2749, 2771. Plaintiff and her mother conceded that she no longer had any "difficulty" with headaches. R. 2874.

The ALJ stated that Plaintiff exhibited signs of ADHD, but explained that he considered her ADHD as part of her severe impairment with her encephalitis, because "it appeared to be resultant of her impairment or treatment for NMDA encephalitis." R. 29. Moreover, the ALJ included Plaintiff's ADHD symptoms into the encephalitis analysis, because the records did not make it "clear that the [Plaintiff had] started specific medications or treatments for ADHD. *Id*. Even so, the ALJ discussed how Plaintiff was now physically enrolled in school, doing well in it, and was a B student. R. 35-36.

The ALJ, however, failed to properly evaluate Plaintiff's mood disorder or depression. In the Third Circuit, an ALJ "must give serious consideration to a claimant's subjective complaints, even when those complaints are not supported by objective evidence." *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993). The *Mason* Court further held that an ALJ may not disregard the claimant's subjective testimony, unless the record contains contrary medical evidence. *Id*. at a1068. An ALJ must also "provide some explanation for a rejection of probative evidence which would suggest a contrary disposition." *Id*. An ALJ "may properly accept some parts of the medical evidence and reject other parts, but [he] must consider all the evidence and give some reason for discounting the evidence [he] rejects." *Id.*

Here, Plaintiff testified to feeling anxious and depressed in school. R. 57-58. Furthermore, the record supports her testimony as Dr. Eliza N. Wilfred diagnosed Plaintiff with adjustment disorder, mixed anxiety and depressed mood. R. 2461-69. Yet, the ALJ does not cite sources in

8

the record to support his finding that her mood disorder, anxiety or depression are nonsevere.  R. 29.

Hence, although the record is replete with examples that the ALJ properly determined that Plaintiff's other impairments were not severe, the ALJ's findings regarding Plaintiff's mood disorder lack substantial evidence.  Thus, remand is appropriate so that the ALJ can accurately and adequately address Plaintiff's depression and mood disorder.

2.   The ALJ's April 17, 2018 Cessation Date Finding Lacks Substantial Evidence

Next, Plaintiff argues that the ALJ picked an arbitrary date when he determined that she medically improved.  This Court agrees.  Although the ALJ found that Plaintiff's impairments resulted in less than marked limitations in the six domains, R. 35-42, he failed to explain why the specific date of April 17, 2018 was when Plaintiff medically improved.  Instead, he cited numerous records to show Plaintiff's improvement, none of which speak to the April 17th date.

On the contrary, the ALJ cited Plaintiff's treating neurologist, Dr. Hopkins', April 15, 2018 report which opined that, although Plaintiff's memory, cognition, and migraines all improved, she still required IVIG treatment and other therapy to maintain improvement.  R. 2778.  In addition, Plaintiff continued to complain to her medical providers about the depression, anxiety, and stress, she felt over schoolwork.  R. 39; *see also* Exhibit 9F and 18F.  This shows that, although Plaintiff was in fact improving as the ALJ determined, she still suffered from depression and anxiety, two things she testified about at the July 31, 2018 hearing.

Although the ALJ's conclusion that Plaintiff improved is generally supported by the medical records support, none of the records show the improvement the ALJ paints as of the April 17th date.  Instead, the ALJ cites an October 2018 report from Dr. Lauren Krivitzky who opined that Plaintiff's "current evaluation indicate a number of relative strengths and areas of

improvements" and that her "performance on tests of general intelligence returned to baseline…with particular improvement in her scores on tests of verbal and nonverbal reasoning." R. 2887. This, however, further undermines the ALJ's April 17th finding as this conclusion was reported six months after the chosen cessation date.

Hence, the ALJ erred when he arbitrarily chose April 17, 2018 as the disability cessation date; remand is necessary so the ALJ can properly reevaluate the April 17 cessation date or select a new date that is, consistent with and supported by substantial evidence.

### 3. The ALJ Properly Discounted Plaintiff's Treating Neurologist's Opinion

Finally, Plaintiff claims that the ALJ improperly rejected the opinion of Plaintiff's treating neurologist, Dr. Hopkins, and failed to afford it proper controlling weight. Pl. Br. at 16. She asserts that the ALJ failed to provide a sufficient explanation to support why he rejected Dr. Hopkins' opinion in the domains of "acquiring and using information[5]" and "health and physical well-being[6]." Pl. Br. at 18-25. The Commissioner responds that the ALJ properly afforded Dr. Hopkins' opinion some weight as the Plaintiff's cognitive testing improved, she physically returned to school, and earned good grades. Resp. at 17.

This Court agrees with the Commissioner and finds that the ALJ's decision is supported by substantial evidence. The ALJ relied on exhibits 10F, 12F, 14F, and 17F when he discussed Plaintiff's improvement and his rationale to afford Dr. Hopkins' opinion some weight.

The ALJ gave Dr. Hopkins' opinion significant weight during the closed period of

---

[5]Acquiring and using information concerns how well a child is able to acquire or learn information, and how well a child uses the information he or she learned. This domain involves how well children perceive, think about, remember, and use information in all settings which include daily activities at home, at school, and in the community. (20 C.F.R. 416.926a(g) and SSR 09-3p).

[6] Health and physical being considers the cumulative physical effects of physical and mental impairments and any associated treatments or therapies on a child's health and functioning that were not considered in the evaluation of the child's ability to move about and manipulate objects. This domain addresses how recurrent illness, the side effects of medication, and the need for ongoing treatment affect the child's health and sense of physical well-being. (20 C.F.R. 416.929a(1) and SSR 09-8p).

disability.  R. 33.  However, Plaintiff had medically improved, as of April 17, 2018; thus, the ALJ afforded Dr. Hopkins' opinion some weight.  R. 37.  In regards to the "acquiring and using information" domain, the ALJ found that Plaintiff had returned to "baseline" in tests of her general intelligence, showing improvements from her 2016 tests.  R. 37.  Moreover, the ALJ cited Plaintiff's improved scores in verbal and nonverbal reasoning, motor skills, processing speeds, word finding, reading comprehension and math calculation skills.  *Id*.  Although the ALJ acknowledged that she showed ongoing limitations from her encephalitis, Plaintiff's cognitive testing had improved since her hospitalization.  *Id*.  The ALJ's decision cites Plaintiff's improvement, her return to school, and "even good grades."  R. 37-38.

Next, in regards to the "health and well-being" domain, the ALJ thoroughly discussed that, although Plaintiff continued her treatment at the Children's Hospital of Philadelphia ("CHOP"), her examinations after April 17, 2018, were normal.  R. 42.  Plaintiff no longer took medication for her seizures, she was off steroids, and her IVIG treatment was stretched out to longer intervals, going from four weeks to six, and finally, to every eight.  R. 42, 64.  Plaintiff also showed a progression in various areas as her headaches improved and doctors decreased the doses of Topiramate and Diazepam.  R. 42.  The ALJ cited exhibits 12F, 14F, 17F, and 10F to show her neurologist's pleasure with her improvement and hard work.  *Id*.  Furthermore, Plaintiff had not had any inpatient treatment for her disability since April 17, 2018.

Dr. Hopkins' July 30, 2018 neurological report even opined that Plaintiff improved to physically attend school and had done "well enough" to maintain her scholarship.  R. 36; Exhibit 17F.  This report further indicated that Plaintiff's memory and cognition had improved, and again, discussed the fact that she received As and Bs, even though she required help.  Dr. Hopkins' also opined in an earlier April 15, 2018 report that Plaintiff's memory, cognition, and migraines all

improved.  R. 2778.  Furthermore, Plaintiff and her mother both acknowledged improvement in her headaches, mental status, and cognition.  R. 36.  Finally, as stated above, the ALJ cited numerous exhibits in the record to verify Plaintiff's continued medical improvement.

Hence, the ALJ's decision to afford some weight to Dr. Hopkins' opinion for the period after Plaintiff's disability is supported by substantial evidence.

## V.   CONCLUSION

Review of the relevant law and the record indicate that the ALJ erred when he failed to properly evaluate Plaintiff's mood disorder and arbitrarily selected April 17, 2018 as the cessation date.  Accordingly, her Request for Review is granted.  An implementing Order and Order of Judgment follow.